**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

LONELLE PENNINGTON,                                        Case No. 1:13-cv-591

               Plaintiff,                                        Spiegel, J.
                                                          Bowman, M.J.

     v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Lonelle Pennington filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes.  As explained below, the undersigned concludes that the ALJ's finding of non-disability should be REVERSED, because the decision is not supported by substantial evidence in the administrative record.

### I.  Summary of Administrative Record

Plaintiff filed an application for Supplemental Security Income ("SSI") in July 2010 alleging a disability onset date of October 2009 due to physical and mental impairments. (Tr. 8, 10).  After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge ("ALJ").   An evidentiary hearing, at which Plaintiff was represented by counsel, was held on February 24, 2012. (Tr. 8).  On March 30, 2012, ALJ Kristen King denied Plaintiff's application in a written decision.  (Tr. 19).

1

The record on which the ALJ's decision was based reflects that Plaintiff was 25 years old at the time of the administrative hearing.  She has a high school education and no past relevant work.  (Tr. 17).  Plaintiff previously received SSI benefits as a minor for cystic fibrosis and borderline intellectual functioning.  (Tr. 138).  In June 2007, Plaintiff's benefits were terminated following a continuing disability review.  (Tr. 137).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "asthma/bronchial pulmonary dysplasia, borderline intellectual functioning, a mood disorder, and a personality disorder."  (Tr. 10).  However, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  (Tr. 12).  The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform medium work with the following limitations:

> She should avoid concentrated exposure to extreme heat, to poorly ventilated areas, and to environmental irritants such as fumes, odors, dusts, and gasses.  She can have no more than occasional interactions with the general public, but no transactional interaction such as sales or negotiations.  She can have no more than occasional interactions with coworkers or supervisors.  She is limited to a static work environment, which is defined as changes in the work setting occurring no more than 10% of the workday.  She can perform no constant production-rate pace work, but can instead perform goal-oriented work.

(Tr. 15).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff can perform jobs that exist in significant numbers in the national economy, such as: material handler, cleaner, assembler, packer, and general factory worker.  (Tr. 18-19).  Accordingly, the ALJ determined that Plaintiff was not under

disability, as defined in the Social Security Regulations, and is not entitled to SSI. (Tr. 19).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by failing to find that Plaintiff's impairments met or equaled the requirements of Listing 12.05 (C) for mental retardation. In her second assignment of error, Plaintiff argues that she is entitled to remand under Sentence Six for consideration of "new and material evidence." Upon close analysis, the undersigned finds that Plaintiff's first assignment of error is well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

3

quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability.  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).  As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts.  If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.*  (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.  However, a plaintiff

bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability or supplemental security benefits.  *See* 20 C.F.R. § 404.1512(a).

   **B. Relevant Evidence and ALJ's Decision**

   Plaintiff's school records indicate that an IEP was implemented early on after it was determined that Plaintiff had a cognitive disability. (Tr. 189). Re-evaluation reports show that previous ability testing and adaptive skills warranted continued IEP services *Id.* Assessments from a school psychologist conducted during Plaintiff's 10th grade school year in 2004 indicate continued adaptive behavior scores "well below average." (Tr. 194).  Test records further indicate that Plaintiff failed every subject on the 9th grade proficiency test, with accommodations provided on those assessments. (Tr. 186).

   The record contains the following relevant medical evidence:

   In November 2007, Plaintiff underwent a psychological consultative evaluation with George Schulz, Ph.D.  (Tr. 215-220).  Dr. Schulz noted that upon testing, Plaintiff obtained a full scale IQ of 65.  (Tr. 218).  Dr. Schulz further indicated Plaintiff's adaptive skills were estimated to be in the borderline range, which did not support a diagnosis of mental retardation.  (Tr. 219).  Dr. Schulz diagnosed Plaintiff with dysthymia, cannabis-related disorder, NOS, borderline intellectual functioning, asthma, and psychosocial and environmental problems-primarily financial and occupational.  (Tr. 218).  Dr. Schulz also determined Plaintiff's Global Assessment of Functioning (GAF) score to be 59 at the time.  (Tr. 219).

   Plaintiff was admitted to Greene Memorial Hospital in February 2008 after presenting with reports of feeling increasingly suicidal and depressed. (Tr. 312). She

also reported superficially cutting her right wrist. *Id.* She was discharged with a diagnosis of major depression, recurrent, and possible low intellectual functioning. *Id.*

In March 2009, Plaintiff was admitted to Mercy Hospital Clermont after presenting with cutting on her wrists superficially and hearing voices. (Tr. 320). Discharge diagnoses included adjustment disorder with depressed mood and borderline personality disorder. *Id.* During her history and physical, the doctor noted her to be of low-average intelligence if not mildly mentally retarded. *Id.* The treatment notes further indicate that Plaintiff's insight into her situation and judgment were very compromised by Plaintiff's lack of intelligence, her lack of resourcefulness, and her self-deprecating cutting behaviors. *Id.*

In September 2009, Dr. Schulz performed another psychological evaluation on Plaintiff. (Tr. 225-231). Dr. Schulz noted that based on his observations during the evaluation, Plaintiff's language usage/recognition was below the normal range for her age. (Tr. 229). Dr. Schulz concluded that Plaintiff's adaptive skills at that time did support a diagnosis of mild mental retardation. *Id.* Dr. Schulz diagnosed Plaintiff with bipolar disorder NOS, mild mental retardation, psychosocial and environmental problems-primarily financial and occupational. Plaintiff's GAF score was determined to be 53 at the time. *Id.*

On October 18, 2010, Plaintiff underwent another psychological consultative examination with George Lester, Psy.D. (Tr. 272-280). According to the examiner, Plaintiff's level of intelligence fell at the low end of the moderate range of mental retardation. (Tr. 277). However, Dr. Lester noted that the calculated full scale IQ of 43 was a low estimate of Plaintiff's actual functioning, which would likely be at the low end

of the borderline range.  *Id.*  Dr. Lester found Plaintiff's GAF score to be 60, indicating that her symptoms were moderate.  (Tr. 278).  Dr. Lester diagnosed Plaintiff with a mood disorder and personality disorder not otherwise specified.  (Tr. 278).

Plaintiff presented to the psychiatric emergency services unit of University Hospital on June 29, 2010 for symptoms including feeling sad and depressed, feeling hopeless, having trouble falling asleep, decreased energy, poor eating, feeling bad about herself, and anxiety.  (Tr. 269). At that time, she was living in a homeless shelter.  (Tr. 268). She was diagnosed with major depressive disorder and given a referral for Mental Health Access Point. (Tr. 266).

In light of the foregoing, at Step-2 of the sequential evaluation the ALJ determined that Plaintiff had the following severe impairments, asthma/bronchial pulmonary dysplasia, borderline intellectual functioning, a mood disorder, and a personality disorder.

At Step 3, the ALJ determined that Plaintiff's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listings 12.04, 12.05, 12.08.  (Tr. 13).   In making this finding, the ALJ considered the paragraph B criteria (paragraph D for 12.05), and determined that Plaintiff had moderate limitations in activities of daily living, social functioning and concentration, persistence or pace.  *Id.* The ALJ noted that Plaintiff was able to graduate high school and attend some mainstream classes.  (Tr. 14).  The ALJ cited Plaintiff's psychiatric hospitalization but concluded that Plaintiff had experienced no extended periods of decompensation.  *Id.*

The ALJ also noted that there is a dispute in the record among the consultative examiners regarding the claimant's intellectual diagnosis.  In this regard the ALJ noted

that the findings of Dr. Schulz from November 2007, wherein he diagnosed Plaintiff with borderline intellectual functioning and in September 2009 wherein he changed his diagnosis to mild mental retardation based upon her current level of adapting functioning observed during his examination. (Tr. 229). The ALJ, however, determined that Plaintiff has borderline intellectual function, not mild mental retardation. In so concluding, the ALJ relied on Plaintiff's school records and the findings of Dr. Lester and Dr. Schulz' first assessment; all of which support a diagnosis of borderline intellectual functioning. (Tr. 13). The ALJ further determined that Plaintiff daily activities further support a diagnosis of borderline intellectual functioning noting that she performed household chores; including washing dishes, cleaning, yard work and laundry; watched television, used her phone to text her friends, and spent time on the computer. *Id.*

**C. The ALJ's decision is not substantially supported**

Plaintiff's first assignment of error asserts that the ALJ failed to provide sufficient reasons for her determination that she did not meet or equal Listing 12.05(C), for mild mental retardation. The undersigned agrees.

*C. Listing 12.05*

Listing 12.05(C) provides:

12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports an onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

... C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

8

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C.

Prior to 2001, there was some ambiguity as to whether a claimant seeking to meet or equal Listing 12.05(C) must not only have an IQ score of 60 through 70, but also show "deficits in adaptive functioning" as suggested in the introductory paragraph 1 to Listing 12.05. However, in *Foster v. Halter,* 279 F.3d 348 (6th Cir. 2001), the Sixth Circuit clarified that a claimant is also required to satisfy the "adaptive functioning" standard. In *Foster*, the plaintiff had dropped out of school after the ninth grade and had two sets of qualifying IQ scores, but the appellate court affirmed the determination that she did not satisfy Listing 12.05 because there was no evidence of deficits in adaptive functioning before age 22, and because the plaintiff's prior work at a bank and a liquor store demonstrated "that she had the ability to perform relatively complicated tasks." *Id.* at 355. Thus, after *Foster*, for a claimant to meet Listing 12.05, he or she "must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations," in addition to the criteria under A, B, C, or D of Section 12.05. *See Hayes v. Comm'r of Soc. Sec.*, 357 Fed. Appx. 672, 675 (6th Cir.2009) (finding that the claimant's adaptive skills were not deficient because she cared for herself and her husband; cooked meals, did laundry, shopped, managed her finances; and took public transportation).

Specifically, with respect to Listing 12.05(C), the ALJ's decision states in relevant part:

> Finally, the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an

> additional and significant work-related limitation of functioning with the requisite deficits in adaptive functioning. The undersigned finds that the claimant has borderline intellectual functioning, and not mild mental retardation, as discussed above.

(Tr. 13-14).

Such analysis, however, fails to build an accurate and logical bridge between the evidence and the ALJ's conclusion. As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011); *see also Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir.2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir.1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

Notably, the ALJ's compound sentence structure of her conclusion that the paragraph C criteria are not met because Plaintiff "does not have a valid ... IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation of functioning *with* the requisite deficits in adaptive functioning " is ambiguous and subject to several interpretations.  Namely, it could be

determined that Plaintiff does not have a valid IQ of 60 through 70; and/or that she does not have additional mental or physical impairment imposing significant work related limitations, and/or that she does not exhibit the requisite deficits in adaptive functioning. As such, the Court is left to speculate as to the ALJ's findings, and therefore cannot properly determine whether the ALJ's decision is substantially supported.

The Commissioner asserts that Plaintiff's assignment of error should be overruled because the ALJ reasonably determined that Plaintiff did not meet or medically equal the requirements of listing 12.05(C). In this regard, the Commissioner notes that "[w]hile Plaintiff did have a valid IQ score between 60 and 70, the ALJ reasonably found that Plaintiff failed to prove that she had "significantly subaverage general intellectual functioning" along with deficits of adaptive functioning before the age of 22. The Commissioner further argues that this "capsule definition exactly tracks the criteria for mental retardation in the Diagnostic Statistical Manual of Mental Disorders. Thus, the ALJ's determination that Plaintiff had a diagnosis of borderline intellectual functioning (BIF), instead of mental retardation, means that Plaintiff did not meet the requirements of listing 12.05C." (Doc. 15, p. 10). However, the ALJ never made such findings.

Notably, the ALJ's 12.05(C) analysis never mentioned Plaintiff's valid IQ score. The undersigned recognizes that the ALJ noted Plaintiff's valid IQ scores of 63 and 65 in his step two analysis; however, such evidence is never discussed in relation to listing 12.05(C). As noted above, one interpretation of the ALJ's 12.05(C) analysis could be that Plaintiff did not have a qualifying IQ, which would be an erroneous finding. Without proper articulation of the ALJ's Listing finding, the Court is left without a basis for

11

meaningful judicial review on this issue. See *Isham v. Astrue*, 3:08-CV-423, 2010 WL 1957362 (E.D. Tenn. Jan. 13, 2010) *report and recommendation adopted,* 3:08-CV-423, 2010 WL 1957312 (E.D. Tenn. May 14, 2010) ("[t]he ALJ's failure to expressly discuss Plaintiff's IQ scores and analyze her impairments within a § 12.05(C) framework denotes a lack of substantial evidence for his determination").

Moreover, as noted by Plaintiff, while the ALJ found that she has borderline intellectual functioning, not mild mental retardation, a diagnosis of mental retardation is not necessarily required for 12.05(C) with a valid verbal, performance, or full scale IQ of 60 through 70. See *Hardiman v. Astrue,* No. 3:11–cv–665, 2012 WL 684843 at *7 (N.D.Ohio March 2, 2012) (citation omitted) (An actual diagnosis of mental retardation is not required to satisfy listing 12.05(C), but the ALJ may consider the fact that no such diagnosis exists). Dr. Schulz' assessment also included a diagnosis of borderline intellectual functioning—not mental retardation-- but with a performance scale IQ of 63 and full scale IQ of 65, Plaintiff would still meet the requirements of Listing 12.05(C) in combination with her mental limitations, regardless of whether she was labeled as having mild mental retarded or borderline intellectual functioning. (Tr. 218, 277). Additionally, the hospital doctor who evaluated her during her 2009 psychiatric admission at Christ Hospital also noted her to be of low-average intelligence if not mildly mentally retarded. (Tr. 322). The doctor further noted that her insight into her situation and judgment were very compromised by Plaintiff's lack of intelligence, her lack of resourcefulness, and her self-deprecating cutting behaviors. *Id.*

In sum, it is not the Court's place to reweigh the evidence contained in the record to make a determination about whether Plaintiff was or is mentally retarded under 20

C.F.R. § 404, Subpt. P, App. 1, § 12.05(C). *See Longworth,* 402 F.3d at 595. Instead, the Court must only look to see whether substantial evidence existed for the determination that was made by the ALJ. Here, the ALJ's failure to expressly discuss Plaintiff's IQ scores and analyze her impairments within a § 12.05(C) framework denotes a lack of substantial evidence for his determination. The fact that the record may ultimately possess substantial evidence to support a conclusion that Plaintiff is not mentally retarded under § 12.05(C) is irrelevant because the ALJ's procedural error denied Plaintiff fair process. *See Blakley,* 581 F.3d 399, 2009 WL 3029653 at *9–10; *Abbott,* 905 F.2d at 925. Accordingly, the undersigned finds that this matter should be remanded because the ALJ's narrative decision does not allow the Court to engage in meaningful review of her determination that Plaintiff's impairments did not meet or equal the § 12.05(C).

### D. Sentence Six Remand

Plaintiff also seeks a remand under Sentence Six of 42 U.S.C. § 405(g) for administrative consideration of new and material evidence received subsequent to the ALJ's hearing but prior to the Appeals Council's decision. The evidence includes: (1) records from Mercy Hospital Clermont dated December 6, 2012 through December 10, 2012; (2) records from Dr. Scott dated October 16, 2012 through November 6, 2012. This additional evidence includes: (1) treatment records from HealthSource of Ohio in October and November 2012 where Plaintiff was receiving treatment for depression, thyroid problems, and anemia, and (2) hospital records from December 2012 showing that Plaintiff was hospitalized with suicidal thoughts and hallucinations. Plaintiff

13

contends that the records are material because they support Plaintiff's prior hospitalizations and an "ongoing psychiatric condition." *Id.*

Ordinarily, this Court's review is limited to evidence that was before the Commissioner during administrative proceedings.  However, an exception exists in the Act for evidence that is new and material, so long as the Plaintiff demonstrates good cause for not submitting the evidence in the prior proceeding.  *See Cline v. Com'r of Soc. Sec.,* 96 F.3d 146, 148 (6th Cir.1996). Plaintiff contends that in this case, the recently obtained hospital records constitute new and material evidence for which remand under sentence six of 42 U.S.C. § 405(g) is appropriate.

"The district court can ... remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and that there was good cause for not presenting it in the prior proceeding.  "*Cline v. Comm'r of Soc. Sec.,*96 F.3d 146, 148. Evidence is "new" if it was not in existence or available to the claimant at the time of the administrative proceeding.  *Foster v.Halter,* 279 F.3d 348, 357.  Evidence is considered "material" if "there is a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (citations and internal quotation marks omitted).  To show "good cause" the moving party must present a valid justification for the failure to have acquired and presented the evidence in the prior administrative proceeding.  *Id.  See also Oliver v. Sec 'y of H.H.S .,*804 F.2d 964, 966 (6th Cir.1986); *Willis v. Sec. of H.H.S.,*727 F.2d 551, 554 (6th Cir.1984).

Plaintiff obtained the hospital and doctor office records following the ALJ's decision but prior to the Appeals Council's decision.  (Doc. 17).  Plaintiff requested an

14

additional 30 days from the branch assignment to file a statement before the Appeals Council.  The Commissioner does not dispute that the records are new.  Therefore, the undersigned finds that the records are "new" because they were not considered prior to the final decision of the Commissioner.

However, the undersigned finds that the records are not "material," because none of the evidence submitted by Plaintiff would have affected the ALJ's decision.  In making her decision, the ALJ considered: (1) medical records from Greene Memorial Hospital dated February 17, 2008 through February 19, 2008; and, (2) medical records from Mercy Hospital-Clermont dated March 26, 2009 through March 29, 2009.  Both sets of records revealed Plaintiff's past hospitalizations for depression and suicidal ideation.  The ALJ evaluated both sets of records in her decision and determined that neither caused Plaintiff to be disabled. The additional records from Mercy Hospital Clermont and Dr. Smith appear to be cumulative of the evidence previously considered by the ALJ.

In any event, the Sixth Circuit has held that when an ALJ commits an error that results in a sentence four remand, the ALJ can consider additional evidence, even though the plaintiff has not otherwise met the requirements for a sentence six remand. *Faucher v. Sec. of Health and Human Servs.,* 17 F.3d 171, 175 (6th Cir.1994). Accordingly, because remand is warranted to cure the errors as outlined above, the ALJ should also be instructed to consider the additional evidence relating to Plaintiff's psychiatric condition on remand.

### III. Conclusion and Recommendation

This matter should be remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation.  A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).  In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175.  All essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Id.* 17 F.3d at 176.

For the reasons explained herein, **IT IS RECOMMENDED THAT**: the decision of the Commissioner to deny Plaintiff SSI benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g) consistent with this opinion.  As no further matters remain pending for the Court's review, this case be **CLOSED**.

   */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

LONELLE PENNINGTON,                                    Case No. 1:13-cv-591

        Plaintiff,                                    Spiegel, J.
                                             Bowman, M.J.

    v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).